**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| HEIDI K. ROBINSON, | : | |
| | : | Case No. 3:21cv-66 |
| | : | |
| Plaintiff, | : | Judge _____ |
| | : | |
| v. | : | |
| | : | |
| ACADEMY HEALTH SERVICES, INC., | : | |
| | : | **JURY DEMANDED** |
| Defendant. | : | |
| | : | |

**COMPLAINT**

**I.   INTRODUCTION**

1. This action is brought by Plaintiff Heidi K. Robinson ("Plaintiff") against Defendant Academy Health Services, Inc. ("Defendant") for unlawfully failing to pay her the Ohio and federally required overtime wages for hours she worked in excess of forty (40) in a given workweek. In doing so, Academy Health Services, Inc. violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 and O.R.C. § 4111.03, and 4111.08 ("the Ohio Wage Act") by failing to pay Heidi K. Robinson 150% of her regular rate for all hours worked over forty (40) in a given workweek. Additionally, Academy Health Services, Inc. violated the Ohio Prompt Pay Act, O.R.C. § 4113.15 ("OPPA") (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts") by failing to pay Heidi K. Robinson within thirty (30) days of her last date worked.

2. Accordingly, Heidi K. Robinson brings this action to recover both unpaid wages and overtime wages and related damages.

## II. JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to federal question jurisdiction under 28 U.S.C. § 1331, in that this case arises under a federal law of the United States.

4. This Court has supplemental jurisdiction over Plaintiff's Ohio state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Plaintiff's claims under the FLSA that they form part of the same controversy.

5. Venue in the Southern District of Ohio is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the unlawful conduct described herein occurred within Montgomery County, Ohio and Defendant's place of business resides in this district.

## III. PARTIES

6. Plaintiff Heidi K. Robinson ("Plaintiff" or "Plaintiff Robinson") is an adult who resides at 915 Crestridge Drive, Howard, Ohio 43028 (Knox County). Plaintiff Robinson worked for Defendant Academy Health Services, Inc. ("Defendant") from approximately May 1, 2019 to approximately February 21, 2020 in the State of Ohio by traveling to the homes of patients who had hired Defendant's services. During her shifts, Plaintiff Robinson would make initial health evaluations, administer medications and assist with pain management, document symptoms and vital signs, monitor patient health, assess whether Medicaid patients were eligible for recertification of Medicaid every sixty (60) days, and input vital data into her computer both from home and her work location for the day.

7. From approximately May 1, 2019 to approximately February 21, 2020, Plaintiff Robinson was an "employee" of Defendant as defined by the FLSA, § 203(e)(1), and within the meaning set forth in the Ohio Wage Act.

8. During her employment with Defendant, Plaintiff Robinson was not fully and/or properly paid for all compensable hours worked because Defendant did not adequately compensate

2

Plaintiff Robinson for her total hours worked, resulting in unpaid wages and unpaid overtime wages.

9. Defendant is a domestic for-profit corporation doing business out of 3320 Office Park Drive, Kettering, Ohio 45439.

10. Defendant utilizes its employees to provides care for the elderly, physically or mentally challenged individuals, handicapped children or infants requiring nursing care, and a range of treatments and therapies in the patients' homes within the areas of Dayton and Maumee, Ohio, and Munster and Indianapolis, Indiana.

11. Defendant's statutory agent, Jagdish P. Patel, may be served at 9969 Humphrey Road, Cincinnati, Ohio 45242.

12. During all times material to this complaint, Defendant was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and within the meaning set forth in the Ohio Wage Act.

13. During all times material to this complaint, Defendant operated an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by an person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

14. During all times material to this complaint, Defendant employed Plaintiff Robinson within the meaning of the FLSA, the Ohio Constitution and the Ohio Acts.

**IV. FACTS**

15. Defendant is in the business of utilizing its employees to provides care for the elderly, physically or mentally challenged individuals, handicapped children or infants requiring nursing care, and a range of treatments and therapies in the patients' homes within the areas of Dayton and Maumee, Ohio, and Munster and Indianapolis, Indiana.

16. Plaintiff was employed by Defendant as a Home Health Registered Nurse (HHRN) from approximately May 1, 2019 to approximately February 21, 2020. Her shifts consisted of traveling to the homes of patients who had hired Defendant's services.

17. During these shifts, Plaintiff Robinson would make initial health evaluations, administer medications and assist with pain management, document symptoms and vital signs, monitor patient health, assess whether Medicaid patients were eligible for recertification of Medicaid every sixty (60) days ("OASIS visits"), and input vital data into her computer both from home and from her work location for the day.

18. Plaintiff was to be paid based on the type of visit she was performing. This could range from a group home, an individual home, or the aforementioned OASIS visits for the purposes of determining if recertification of Medicaid for eligible patients was proper.

19. The breakdown of pay depending on the type of visit was as follows: $16.00 per each individual patient in a group home; $18.00 per each individual home visit; $45.00 per OASIS visit from approximately May 1, 2019 to approximately October 1, 2019; and $60.00 per OASIS visit from approximately October 1, 2019 to approximately February 21, 2020.

20. The OASIS visits were paid at such a higher rate as Plaintiff was to ask the patient a pre-determined set of one-hundred and eleven (111) questions for the purpose of determining whether recertification of Medicaid was appropriate for the respective patient. This was to occur every sixty (60) days for Defendant's Medicaid patients.

21. The OASIS visits increased in the flat pay-rate of $45.00 per visit to $60.00 per visit when Defendant instructed Plaintiff to begin seeing patients in Licking County. As Plaintiff lived in Knox county, this trip often required her to drive up to one hour in order to visit Defendant's patients.

22. Plaintiff was not compensated for her drive time, nor was she compensated for any travel expenses.

23. Plaintiff's compensation also consisted of additional remuneration for work performed during specific shift(s) and/or day(s). These additional forms of remuneration include, but are not limited to, non-discretionary bonuses for working extra hours or shifts for which the employee was not scheduled to work (hereinafter non-discretionary bonuses for working extra hours or shifts for which the employee was not scheduled to work will be referred to as "Additional Remuneration").

24. The Additional Remuneration was for the purpose of motivating Plaintiff to either work more efficiently or to attend a shift which she was not previously scheduled to work, resulting in Plaintiff knowing about and expecting the Additional Remuneration.

25. Plaintiff was expected to continue working from home, as she was to document the details of her visit into her computer, which would ultimately end up in Defendant's control for its own evaluation and records.

26. The services rendered by Plaintiff at the direction of Defendant were an integral part of Defendant's business, as making initial health evaluations, administering medications and assisting with pain management, documenting symptoms and vital signs, monitoring patient health, performing OASIS visits, and inputting vital data into her computer both from home and from her work location for the day all serve to further the pursuit of Defendant's business purpose and both parties' common goal of providing care for the elderly, physically or mentally challenged

5

individuals, handicapped children or infants requiring nursing care, and a range of treatments and therapies in the patients' homes.

27. Further, more than ninety percent (90%) of Plaintiff's primary duties were either administrative in nature or duties which are customarily performed by a Licensed Practical Nurse (LPN) which is not work requiring advanced knowledge and which does not require the consistent exercise of discretion and judgment which included: administering and documenting OASIS assessments; administering medications to patients; inserting and/or changing catheters; monitoring basic patient health such as vital signs and overall condition; and assisting with the administration of insulin for diabetic patients.

28. On several occasions, when Plaintiff attempted to use clinical reasoning, both her co-workers and the independent staff caring for respective patients placed in group would disregard her recommendations, not allowing her to utilize her advanced knowledge to perform work duties, effectively relegating her role to that of an LPN.

29. Plaintiff is not in business for herself but is, rather, an integral part of Defendant's business operations.

30. Plaintiff was economically dependent upon Defendant for all her work and for the payment of her living expenses.

31. Plaintiff's schedule was controlled by Defendant, and such schedule dictated where Plaintiff was to work each day, at what time she was to be there, and for how long her visit should last.

32. At all times material to this complaint, Plaintiff's payment was controlled by Defendant.

33. Plaintiff was also issued a form W-2 by Defendant, evidencing the existence of their employer-employee relationship.

34. Despite her title as a HHRN, Plaintiff was an hourly, non-exempt employee of Defendant as defined in the FLSA and the Ohio Acts.

35. At all times material to this complaint, Plaintiff was not paid $455.00 per week during the year 2019, nor was she paid $684.00 per week during the year 2020.

36. During her employment with Defendant, Plaintiff was not fully and properly paid for all of her compensable hours worked because Defendant did not properly calculate her regular rate of pay for the purposes of lawfully paying her for her overtime hours worked, resulting in unpaid overtime wages.

37. Plaintiff worked more than forty (40) hours in a workweek for nearly all of the time she worked for Defendant.

38. In fact, Plaintiff often worked between fifty (50) and sixty (60) hours per workweek for nearly all of the time she worked for Defendant, yet she was never paid 150% of her regular rate for any hours she worked in excess of forty (40) in a workweek compensation at an hourly rate for all hours worked.

39. Defendant did not include Plaintiff's Additional Remuneration for work performed during specific shift(s) and/or day(s) in her regular rate.

40. Plaintiff should have been, but was not, compensated at an hourly rate. Rather, Plaintiff was compensated per type of visit, which Defendant never used to calculate Plaintiff's regular rate of pay for purposes of determining her proper overtime rate.

41. Plaintiff routinely submitted timely and detailed timesheets as required by Defendant.

42. The unpaid work performed by Plaintiff, both at her regular rate and the hours she worked in excess of forty (40) in a workweek that should have been paid at one and one-half times

7

her regular rate, directly benefited Defendant by reducing the cost of labor for Defendant who willfully withheld compensation for that work from Plaintiff.

43. Plaintiff was furthering the business purpose of Defendant's enterprise when she performed her job duties and tasks that were integral and indispensable to her principal work activities.

44. Plaintiff was not paid on a salary basis and did not receive at least $455.00 per week for all weeks she worked in 2019 nor did she receive $684.00 per week for all weeks she worked in 2020.

45. Plaintiff was Defendant's "non-exempt" employee under the FLSA, the Ohio Constitution, and the Ohio Wage Act.

46. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff Robinson suffered a loss of income and federal and Ohio wage violations.

47. The FLSA and Ohio Wage Act requires Defendant to pay overtime compensation to its employees at the rate of one and one-half times their regular rate for the hours they worked in excess of forty (40). 29 U.S.C. § 207; O.R.C. §§ 4111.03, 4111.10.

48. Defendant's violations of the FLSA and the Ohio Wage Acts are willful because Defendant did not have a good faith basis for the way it paid Plaintiff.

49. Defendant has failed to pay Plaintiff the wages she is owed for more than thirty (30) days.

**COUNT I**
**FAIR LABOR STANDARDS ACT**
**FAILURE TO PAY OVERTIME WAGES**

50. Plaintiff re-alleges, and incorporates by reference, the allegations set forth in the preceding paragraphs.

51. During all times material to this Complaint, Plaintiff was an "employee" of Defendant as defined by the FLSA, § 203(e)(1).

52. However, if Plaintiff is not an employee of Defendant, but is an independent contractor, Plaintiff still maintained an employer-employee relationship with Defendant under the economic reality of her work.

53. Defendant, as described above, violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, by failing to pay Plaintiff Robinson at the overtime rate for all hours worked in excess of forty (40) per workweek.

54. Under 29 U.S.C. § 207(e), "regular rate" of pay shall be broadly deemed to include all remuneration for employment paid to, or on behalf of, the employee. *See* 29 U.S.C. § 207(e); *see also* 29 C.F.R. § 778.208; 29 C.F.R. § 778.211.

55. Plaintiff was not exempt from receiving FLSA overtime benefits because *inter alia*, she was not an "executive," "administrative," or "learned professional" employee, as those terms are defined under the FLSA. *See* 29 C.F.R. §§ 541.1, *et seq*.

56. Plaintiff was not paid on a salary basis and was not paid at least $455.00 per week for every week she worked in 2019 nor was she paid $684.00 per week for every week she worked in 2020.

57. Plaintiff was not exempt from receiving FLSA overtime benefits because, *inter alia*, she was not a "learned professional" employee, as that term is defined under the FLSA. *See* 29 C.F.R. § 541.301.

58. While Plaintiff was a registered nurse by training, Defendant did not employ her as a registered nurse, her primary duties did not require advanced knowledge, which were predominantly intellectual in character which were in a field of science or learning.

9

59. In fact, more than ninety percent (90%) of Plaintiff's primary duties were either administrative in nature or duties which are customarily performed by a Licensed Practical Nurse (LPN) which is not work requiring advanced knowledge and which does not require the consistent exercise of discretion and judgment which included: administering and documenting OASIS assessments; administering medications to patients; inserting and/or changing catheters; monitoring basic patient health such as vital signs and overall condition; and assisting with the administration of insulin for diabetic patients.

60. On several occasions, when Plaintiff attempted to use clinical reasoning, both her co-workers and the independent staff caring for respective patients placed in group would disregard her recommendations, not allowing her to utilize her advanced knowledge to perform work duties, effectively relegating her role to that of an LPN.

61. Plaintiff's compensation by fee basis was less than $455.00 per week in 2019 and less than $684.00 per week in 2020.

62. With the inclusion of Plaintiff traveling one hour to a patient's home, and with her only being compensated $18.00 per an individual home visit which would typically last forty (40) minutes, this compensation would yield Plaintiff $432.00 for 40 hours worked.

63. Plaintiff should have been paid the correct overtime rate for all hours worked in excess of forty (40) hours per workweek during the three (3) years from the filing date of the Complaint.

64. Defendant is an "enterprise engaged in commerce or in the production of goods for commerce" for the purposes of the FSLA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual

gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

65. At all times material to this Complaint, Defendant regularly employed Plaintiff to work more than forty (40) hours in a workweek.

66. At all times material to this Complaint, Plaintiff did not receive 150% of her regular rate for any hours she worked in excess of forty (40) in a workweek as compensation at an hourly rate for all hours worked.

67. At all times material to this Complaint, Defendant failed to include Plaintiff's Additional Remuneration for work performed during specific shift(s) and/or day(s) in her regular rate when calculating overtime compensation.

68. At all times material to this Complaint, Defendant violated the FLSA by repeatedly failing to compensate Plaintiff Robinson for all hours worked.

69. At all times material to this Complaint, Defendant violated the FLSA by repeatedly failing to pay Plaintiff Robinson the legally mandated overtime premium at a rate no less than one and one-half Plaintiff's regular pay rate for all hours worked in excess of forty (40) worked in one workweek.

70. Defendant knew or should have known of the overtime payment requirements of the FLSA. Defendant willfully withheld and failed to pay the overtime compensation to which Plaintiff is entitled.

71. Defendant willfully violated the FLSA by having engaged in conduct which demonstrates a willful and/or reckless disregard for the provisions of the FLSA.

## COUNT II
## OHIO WAGE ACT
## FAILURE TO PAY OVERTIME WAGES

72. Plaintiff re-alleges, and incorporates by reference, the allegations set forth in the preceding paragraphs.

73. The Ohio Wage Act provides that covered employees shall be compensated for every hour worked in one workweek. *See* R.C. §§ 4111, *et seq.*; see also 29 U.S.C. § 206(b).

74. The Ohio Wage Act provides that employees shall receive overtime compensation at a rate "not less than one and one-half times" the employee's regular rate of pay for all hours worked over forty (40) hours in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* R.C. § 4111.03(A); 29 U.S.C. § 207(a)(1).

75. At all times material to this Complaint, Defendant was an "employee" covered by the Ohio Wage Act and has been thus required to comply with its mandates.

76. At all times material to this Complaint, Plaintiff Robinson was a covered "employee" of Defendant's pursuant to the Ohio Wage Act and thus entitled to the Ohio Wage Act's protections.

77. At all times material to this Complaint, Defendant violated the Ohio Wage Act by repeatedly failing to compensate Plaintiff Robinson for all hours worked, including Defendant's repeated action of refusing to compensate Plaintiff for both hours worked within a workweek and all hours worked over forty hours in one workweek at a rate not less than one and one-half times.

78. At all times material to this Complaint, Plaintiff did not receive 150% of her regular rate for any hours she worked more than forty (40) in a workweek as compensation at an hourly rate for all hours worked.

79. At all times material to this Complaint, Defendant failed to include Plaintiff's Additional Remuneration for work performed during specific shift(s) and/or day(s) in her regular rate when calculating overtime compensation.

80. At all times relevant to this Complaint, Defendant violated the Ohio Wage Act by repeatedly failing to pay Plaintiff Robinson the legally mandated overtime premium at a rate no less than one and one-half Plaintiff's regular pay rate for all hours worked in excess of forty (40) worked in one workweek.

81. Plaintiff is not exempt from the wage protections of Ohio Law. During relevant times, the Plaintiff was not exempt from receiving overtime because she was not an "executive," "administrative," "professional," "outside sales" or "computer" employee, as those terms are defined under the FLSA. *See* O.R.C. § 4111.03(A); *see also* C.F.R. §§ 541.0.

82. In violating the Ohio Wage Act, Defendant's acts and omissions have been of a willful, intentional, and bad faith nature or otherwise in reckless disregard of the Ohio Wage Act.

## COUNT III
## OHIO PROMPT PAY ACT
## FAILURE TO PROMPTLY PAY WAGES

83. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

84. At all times material to this Complaint, Defendant was Plaintiff Robinson's "employer" and was required to comply with the Ohio Prompt Pay Act's provisions. *See* R.C. § 4113.15.

85. The OPPA provides that employers shall pay covered employees all wages, including overtime, on or before the first day of each month for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and, on or before the fifteenth day of each month, for wages earned during the preceding calendar month. *See* R.C. § 4113.15(A).

13

86. At all times material to this Complaint, Defendant has refused to promptly pay Plaintiff—Defendant has missed, and has not yet paid, all overtime payments owed to Plaintiff Robinson from her time spent working for Defendant from approximately May 1, 2019 to approximately February 21, 2020—within (30) days of performing the work. *See* R.C. § 4113.15(A).

87. At all times material to this Complaint, Defendant has refused to pay Plaintiff's wages for all hours worked and has refused to pay Plaintiff all owed overtime wages at one and one-half times her normal hourly rate, within thirty (30) days of performing the work. *See* R.C. § 4113.15(B).

88. Plaintiff's wages remain unpaid for more than thirty (30) days beyond her regularly scheduled payday.

89. Defendant's violations of the OPPA has been of a willful, intentional, or bad faith nature or has otherwise exhibited a reckless disregard of the OPPA's provisions.

## JURY DEMAND

Plaintiff requests a trial by jury on all her claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robinson prays that this Court enter the following relief:

1. Expectation and damages for all missed payments taken from or applied to Plaintiff's pay;

2. An order awarding Plaintiff back pay equal to the amount of all unpaid overtime for up to three (3) years preceding the filing of this complaint to the present, plus an additional equal amount in liquidated damages;

3. Pursuant to O.R.C. § 4111.14(J), an order awarding an amount set by the court sufficient to compensate Plaintiff and deter future violations by the Defendant of the Ohio Wage Act, but not less than one hundred fifty dollars for each day that the violation continued;

4. Awarding Plaintiff the sum of 6% of the total unpaid wages or $200.00 for each instance of failure to pay wages owed within thirty days, whichever is greater, pursuant to the Ohio Prompt Pay Act, § 4113.15(A).

5. An Order awarding attorney's fees and costs pursuant to 29 U.S.C. § 216(b); and,

6. An order awarding attorney's fees and costs.

Dated: February 25, 2021                                    Respectfully Submitted,

**BARKAN MEIZLISH DEROSE**
**WENTZ MCINERNEY PEIFER, LLP**

/s/*Robert E. DeRose*
Robert E. DeRose (OH Bar No. 0055214)
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com

*Counsel for Plaintiff*